UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-64049-BEM |
| | ) | |
| ANGELIA THACKER COGLEY, | ) | CHAPTER 7 |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| S. GREGORY HAYS, Trustee for the | ) | |
| Estate of Angelia Thacker Cogley, | ) | |
| | ) | |
|     Movant, | ) | CONTESTED MATTER |
| | ) | |
| v. | ) | |
| | ) | |
| TONYA LOGAN and DAVID LOGAN, | ) | |
| CHEROKEE COUNTY TAX | ) | |
| COMMISSIONER, | ) | |
| CHRISTY COGLEY, and | ) | |
| ANGELIA THACKER COGLEY, | ) | |
| | ) | |
|     Respondents. | ) | |
| | ) | |

**TRUSTEE'S MOTION FOR AUTHORITY TO (I) SELL PROPERTY OF THE
BANKRUPTCY ESTATE FREE AND CLEAR OF LIENS, INTERESTS, AND
ENCUMBRANCES AND (II) DISBURSE CERTAIN PROCEEDS AT CLOSING**

COMES NOW S. Gregory Hays, as the Chapter 7 Trustee (the "**Trustee**") of the bankruptcy

estate (the "**Bankruptcy Estate**") of Angelia Thacker Cogley (the "**Debtor**") and files this *Motion*

*for Authority to (I) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests, and*

*Encumbrances and (II) Disburse Certain Proceeds at Closing* (the "**Sale Motion**"), pursuant to 11

U.S.C. §§ 363(b) and (f) and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, other than in

the ordinary course of business, and respectfully shows the Court as follows:

**Jurisdiction**

1.      This Court has jurisdiction to hear this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Sale Motion presents a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2.      Debtor filed a voluntary petition constituting an order for relief under Chapter 7 on August 21, 2018 (the "**Petition Date**"), initiating Case No. 18-64049-BEM (the "**Bankruptcy Case**").

3.      On or about August 22, 2018, Trustee was appointed to the Bankruptcy Case as interim Chapter 7 trustee under 11 U.S.C. § 701(a)(1).

4.      The original meeting of creditors was scheduled for September 25, 2018, pursuant to 11 U.S.C. § 341(a) (the "**341 Meeting**"). Debtor failed to appear at that time. The 341 Meeting was rescheduled to October 23, 2018, at which time, the Trustee conducted and concluded the 341 Meeting, and thereafter, he became the permanent Chapter 7 trustee, under 11 U.S.C. § 702(d).

5.      At the commencement of the Bankruptcy Case, the Bankruptcy Estate was created under 11 U.S.C. § 541(a), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Bankruptcy Case and any interest in property that the Bankruptcy Estate acquired after commencement of the Bankruptcy Case. 11 U.S.C. § 541(a)(1) and (7).

6.      Trustee is the sole representative of the Bankruptcy Estate. 11 U.S.C. § 323(a).

7.      The duties of Trustee include his obligation to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1).

8.      Trustee filed his *Application to Appoint Attorneys for Trustee* [Doc. No. 11] on October 15, 2018, requesting an order authorizing the appointment of Arnall Golden Gregory LLP as attorneys for Trustee, and on October 17, 2018, the Court entered an order [Doc. No. 12] approving this application.

### a. The Property

9.      On her *Schedule A/B: Property* [Doc. No. 1 at page 15 of 75], Debtor scheduled her undivided one-half interest in that certain real property known generally as 461 (consisting of 321, 461, and 0) Reavis Mountain Road, Ball Ground, Cherokee County, Georgia 30107 (the "**Property**").

10.     Debtor jointly owns the Property with Christy Cogley ("**Ms. Cogley**").

11.     On her *Schedule C: The Property Claimed as Exempt* [Doc. No. 1 at page 21 of 75], Debtor claimed an exemption in the Property in the amount of $10,567.00 under O.C.G.A. § 44-13-100(a)(6) (the "**Property Exemption**").[1]  Upon information and belief, the Property is not the Debtor's residence.

### b. Alleged Liens, Interests, and Encumbrances on or against the Property

12.     On her *Schedule D: Creditors Who Have Claims Secured by Property* [Doc. No. 1 at page 23-24 of 75], Debtor scheduled no claims on or against the Property.

13.     Trustee obtained a full title examination report of the Property dated November 1, 2018 (the "**Title Report**"), which also reflected a *Deed to Secure Debt* dated February 4, 2009, in the original principal amount of $6,000.00 in favor of Tonya Logan and David Logan (the

---

[1]      Based on recent discussions with Debtor's attorney, Trustee expects that Debtor will be amending her scheduled exemption in the Property, and this amendment will likely significantly reduce the amount claimed.  As a result, Trustee is requesting authority to pay this exemption, up

"**Logan Deed**").  The Logan Deed matured on November 4, 2010.  Upon information and belief, the Logan Deed has been fully satisfied and simply never cancelled of record.  Alternatively, the security interest granted through the Logan Deed reverted back to the Debtor prior to the Petition Date under O.C.G.A. § 44-14-80.

14.    The Title Report reflect no other liens, interests or encumbrances on or against the Property, with the exception of 2018, 2019 *ad valorem* real property taxes due the Cherokee County Tax Commissioner in the total amount of $6,675.61, plus the Bankruptcy Estate's 2020 pro-ration based on the 2020 tax bill in the amount of $3,847.68.

### c. Authority to Sell Co-Owned Property Under Section 363(h)

15.    On January 11, 2019, Trustee filed a *Complaint,* initiating adversary proceeding No. 19-05009-BEM, seeking among other things, to sell Ms. Cogley's interest in the Property.

16.    By virtue of a *Consent Order* [A.P. Doc. No. 9] and *Consent Final Judgment* [A.P. Doc. No. 10] (the "**Consent Judgment**"), entered by the Court on July 12, 2019, Trustee is authorized to sell Ms. Cogley's 50% interest in the Property by motion under 11 U.S.C. §§ 363(b) and (f), and the Bankruptcy Estate and Ms. Cogley will each be entitled to one-half of the net sale proceeds, after payment of all costs of sale, including, without limitation, a reasonable broker's commission, all unpaid *ad valorem* taxes, water and sewer liens, and any other miscellaneous costs associated with the sale.

### Request for Authority to Sell the Property of the Bankruptcy Estate
### Free and Clear of All Liens, Interests, and Encumbrances
### Pursuant to 11 U.S.C. §§ 363(b) and (f)

17.    On August 15, 2019, Trustee filed an *Application to Employ Real Estate Agent*

---

to its currently claimed amount.  Trustee's actual payment may be less depending on the coming amendment.

*Under Listing Agreement* [Doc. No. 25] (the "**Realtor Application**"), and, on August 16, 2019, the Court entered an *Order* [Doc. No. 26], granting the Realtor Application and authorizing the employment of Atlanta Communities Real Estate Brokerage, LLC and Bill Celler ("**Atlanta Communities**") as Trustee's listing agent for the Property at a six percent (6%) commission of the selling price.

18.     However, after having the Property listed for over a year and never receiving any acceptable offers, Atlanta Communities, Atlanta Communities' listing agreement expired on August 31, 2020.

19.     Accordingly, Trustee filed *Trustee's Application to Employ Auctioneer* [Doc. No. 29] on August 29, 2020 (the "**Auctioneer Application**"), and the Court entered an *Order* [Doc. No. 30] on September 1, 2020, granting the Auctioneer Application and authorizing the employment of Bullseye Auction & Appraisal, LLC ("**Bullseye**") as Trustee's auctioneer to conduct a sale by public auction, for a ten percent (10%) commission of the gross sale price, plus reimbursement of any actual out-of-pocket expenses up to $750.00.

20.     On September 19, 2020, Trustee filed a *Motion for Authority to (I) Sell at Public Auction Property of the Bankruptcy Estate Free and Clear of All Liens, Interests, and Encumbrances and (II) to Disburse Certain Proceeds at Closing* [Doc. No. 32] ("**Motion to Sell at Auction**"), and a *Notice of Pleading, Deadline to Object, and for Hearing* [Doc. No. 34], setting a hearing for October 20, 2020.

21.     After the filing of the Motion to Sell at Auction, Trustee was contacted by a party regarding the previous listing with Atlanta Communities who expressed an interest in purchasing the Property.

22.     After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for

the sale of the Property to Matt Ragsdale (the "**Purchaser**") "as is" for an *all-cash* sale price of $181,125.00 (the "**Purchase Price**"), subject to Bankruptcy Court approval (the "**Contract**"). A true and correct copy of the Contract is attached hereto and incorporated herein by reference as Exhibit "A."

23.    Although the listing agreement had expired, the Purchaser was procured through the efforts of Trustee and Atlanta Communities. The selling broker has agreed to waive her commission in this transaction,[2] and Atlanta Communities will be paid a commission of 3.5% of the Purchase Price.

24.    The Purchaser is a *bona fide* purchaser and is not an insider of the Debtor, Trustee, or Atlanta Communities. The Purchaser has submitted an earnest money deposit in the amount of $5,000.00. Trustee will pay none of Purchaser's closing costs.

25.    The proposed Contract with a Purchase Price of $181,125.00 (i) is an all-cash offer, (ii) subject to no contingencies whatsoever, (iii) represents the highest and best offer Trustee has received, and (iv) is an appropriate selling price for the Property. Further, with the proposed Contract, the costs to the Bankruptcy Estate, paying only a 3.5% commission of the Purchase Price, are much less than they would be with a sale at an auction, where the Bankruptcy Estate would pay a 10% real commission of the selling price, plus $750.00 in out-of-pocket expenses.

26.    Accordingly, Trustee has filed an *Amended Notice of Pleading, Deadline to Object, and for Rescheduling Hearing* [Doc. No. 37], rescheduling the hearing on the Motion to Sell at Auction to December 8, 2020, pending court approval of the Contract and subsequent

---

[2]    Alternatively, the Purchaser will be separately responsible for payment of any commission to the selling broker.

closing of the sale of the Property to the Purchaser.  If the currently proposed sale closes, Trustee

will withdraw the Motion to Sell at Auction.

## Legal Analysis

27.    Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a

hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the

estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105 of the Bankruptcy Code grants this Court the

authority to "issue any order, process, or judgment necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).

28.    Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under

11 U.S.C. § 363(b) free and clear of any interest in such property if, among other things, the

price at which the property is to be sold is greater than the aggregate of the liens on such

property or with respect to interests that are in dispute.  11 U.S.C. § 363(f).  Specifically, that

code section provides:

(f)  The trustee may sell property under subsection (b) or (c) of this section free and clear

of any interest in such property of an entity other than the estate, only if-

(1)    applicable nonbankruptcy law permits sale of such property free and clear
       of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be sold is
       greater than the aggregate value of all liens on such property;
(4)    such interest is in bona fide dispute; or
(5)    such entity could be compelled, in a legal or equitable proceeding, to
       accept a money satisfaction of such interest.

*Id.*

29.    The proposed sale of the Property is one not in the ordinary course of business, as

provided by 11 U.S.C. § 363(b).  Trustee can, under 11 U.S.C. § 363(f), sell the Property free

and clear of all liens, claims, and encumbrances with any lien (to the extent valid, perfected,

enforceable, and unavoidable) attaching to the proceeds of the sale with the same priority and extent as they had in the Property.

30.    With the exception of *ad valorem* real property taxes, Trustee does not believe that there are any liens or encumbrances against the Property.  Therefore, Trustee respectfully requests authority from the Court to sell the Property as provided by 11 U.S.C. §§ 363(b) and (f).

### Request for Authority to Disburse Certain Proceeds at Closing

31.    Trustee moves for authority to have all gross sale proceeds paid to him at closing and for authority to have paid at closing (a) all outstanding *ad valorem* real property taxes in the estimated amount of $6,675.61, (b) the Bankruptcy Estate's 2020 pro-ration of *ad valorem* real property taxes; (c) any capital gains taxes (none anticipated); (d) a 3.5% real estate commission to Atlanta Communities in the amount of $6,125.00; and (e) all other customary closing costs and all other costs necessary to close the sale of the Property.

32.    Trustee also requests authority to pay the Property Exemption up to the amount of $10,567.00.[3]

33.    Trustee also requests authority to have paid at closing Ms. Cogley's 50% interest, in accordance with the terms of the Consent Judgment.

34.    All other distributions will be pursuant to further order of this Court.

35.    To the extent that funds are disbursed at closing by a party other than Trustee, such party shall be treated as Trustee's designated and authorized agent for disbursements.

36.    Trustee estimates that the proposed sale will resulting in approximately

---

[3]    As mentioned above, based on recent discussions with Debtor's attorney, Trustee expects that Debtor will be amending her scheduled exemption in the Property, and this amendment will likely significantly reduce the amount claimed.  As a result, Trustee is requesting authority to

$80,000.00 coming into the Bankruptcy Estate for distribution in accordance with Section 726.

### Other Relief Requested

37.     In addition, Trustee expressly reserves and does not waive his right to surcharge the Property and the proceeds thereof, to the extent it secures an allowed secured claim, for reasonable, necessary costs of preserving or disposing of the Property to the extent of any benefit to the holders of such secured claims under 11 U.S.C. § 506(c).

38.     Trustee requests that the Court waive the stay of the Order approving the proposed sale as authorized under Federal Rule of Bankruptcy Procedure 6004(h).

39.     Finally, following notice to all creditors and parties in interest of the Sale Motion, and the date of the Hearing, Trustee invites any and all competing cash bids which exceed the present Contract by **at least $7,500.00,** supported by earnest money of **at least five percent (5%) of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)     Granting the Sale Motion;

(b)     Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests and encumbrances;

(c)     Authorizing the distribution of certain proceeds at closing;

(d)     Authorizing the proposed sale to be consummated immediately as allowed by Federal Rules of Bankruptcy Procedure Rule 6004(h); and

---

pay this exemption, up to its currently claimed amount.  Trustee's actual payment may be less depending on the coming amendment.

(e)    Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 19th day of October, 2020.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By:  */s/ Michael J. Bargar*
        Michael J. Bargar
        Georgia Bar No. 645709

171 17th Street, Suite 2100
Atlanta, Georgia 30363-1031
(404) 873-8500 / michael.bargar@agg.com

## TRUSTEE'S PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into by and between **S. GREGORY HAYS, as and only as Trustee in Bankruptcy for Estate of ANGELIA THACKER COGLEY (Chapter 7 Case No. 18-64049-BEM)** (hereinafter referred to as "Seller") and **MATT RAGSDALE** (hereinafter, "Purchaser");

## W I T N E S S E T H :

1.     <u>Agreement to Sell and Purchase.</u>  For and in consideration of ONE DOLLAR ($1.00) in hand paid by Purchaser in favor of Seller, receipt of which is hereby acknowledged, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, free and clear of all liens and encumbrances as approved by the Bankruptcy Court (hereinafter defined) and subject to and in accordance with all of the terms and conditions of this Agreement, all that tract or parcel of land lying and being in **Land Lot 235, 4th District, 2nd Section, Cherokee County, commonly known as 461 (and includes 321 and 0) Reavis Mountain Road, Ball Ground, Georgia 30107,** together with all rights, ways and easements appurtenant thereto, and all buildings, structures and other improvements located on the land and all lighting fixtures, mechanical, plumbing, air conditioning and other systems and fixtures as are attached or affixed thereto (hereinafter called the "Property").

2.     <u>Purchase Price; Method of Payment.</u>  The aggregate purchase price for the Property (hereinafter referred to as the "Purchase Price") shall be **ONE HUNDRED EIGHTY-ONE THOUSAND ONE-HUNDRED TWENTY-FIVE AND NO/100 DOLLARS ($181,125.00)**. Purchaser shall pay to Seller at Closing (as subsequently defined) the Purchase Price, after crediting the Earnest Money, and subject to the pro-rations and adjustments hereinafter described, as follows:

> Purchaser shall pay the Purchase Price to Seller at Closing in cash or cash equivalent.  Purchaser's obligation to close shall not be subject to any financial contingency unless set forth hereafter on **EXHIBIT "C."**

3.     <u>Earnest Money.</u>  Prior to or contemporaneously with Purchaser's execution of this Agreement, Purchaser has delivered to Seller a check drawn upon good funds in the amount of **FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00)** (the "Earnest Money").  Seller shall, within five (5) business days following receipt, place the Earnest Money in an escrow account of Seller's choosing.  All parties to this Agreement acknowledge that Seller may deposit the Earnest Money in escrow/trust account and that Seller will be entitled to retain the interest earned on said Earnest Money deposit.  If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied as part payment of the Purchase Price to be paid by Purchaser at the Closing.  In the event any earnest money check is not honored for any reason, by the bank upon which it is drawn, Seller shall promptly notify Purchaser. Purchaser shall have 3 banking days after notice to deliver good funds to Seller. In the event Purchaser does

15630251v1

not timely deliver good funds, the Seller shall have the right to terminate this Agreement upon written notice to the Purchaser. In the event of any default in the performance of the terms of this Agreement by Purchaser, the Seller may elect to accept the Earnest Money as liquidated damages in full settlement of any claim for damages and/or seek to enforce specific performance rights and obligations against the Purchaser under the terms of this Agreement.  In the event Purchaser fails to pay any portion of the Purchase Price, Purchaser shall be considered to have breached the Agreement and Seller shall have the right to re-offer the Property for sale to others and to demand liquidated damages equal to the amount of the Earnest Money and/or demand specific performance.  The parties acknowledge the difficulty of accurately estimating Seller's damages in the event of Purchaser's default and acknowledge that the amount of the Earnest Money is a reasonable pre-estimate of the probable loss to Seller resulting from Purchaser's default.  In such event, the Earnest Money shall constitute liquidated damages and shall not be deemed a penalty. In the event this Agreement is terminated by Purchaser in accordance with any right of Purchaser to do so under the terms hereof, the Earnest Money shall be returned to Purchaser.

    4.    <u>Access and Inspection; Examination by Purchaser, Examination Period.</u>

    (a)    Purchaser acknowledges that Purchaser has had an opportunity to inspect the Property and accepts the Property in its present condition. Purchaser and Seller acknowledge that Seller has no obligation to correct any objections Purchaser may have or to make any repairs to the Property.  The Property is sold "AS IS, WHERE IS" AND WITH ALL FAULTS, including but not limited to lead-     based paint hazards and damage from termite and other wood-destroying organisms.  Purchaser agrees to indemnify and hold harmless Seller from and against any and all loss, costs, claims, injuries, and/or damages arising out of or relating to the acts of Purchaser or Purchaser's agents on the Property.

    (b)    Notwithstanding anything herein to the contrary, Seller's responsibility in connection with the Property shall cease upon Purchaser's acceptance of the Property.

    5.    <u>Closing.</u>  The closing of the purchase and sale of the Property, hereinafter called "Closing", shall take place on or before **November 30, 2020**, **or within ten (10) days following approval of the sale by the Bankruptcy Court** as provided in paragraph 31 hereof (herein called the "Closing Date"), at the offices of Seller or **Campbell & Brannon, LLC, 5565 Glenridge Connector, Suite 350, Atlanta, Georgia 30342; Telephone: 770.396.8535,** or at such other place as Seller and Purchaser may mutually agree upon. At the Closing, all gross proceeds (the "Proceeds") from the sale of the Property shall be paid directly to Seller for disbursement by the Seller to any claimants in accordance with the approval of the Bankruptcy Court (as hereinafter defined). Any valid lien or security interests in the Property shall be transferred from the Property to the Proceeds. All liens or security interests in the Property shall be null and void as to the Property upon appropriate Order of the Bankruptcy Court, and without the necessity of any separate cancellations or releases.

15630251v1

6.    <u>Prorations and Adjustments to Purchase Price.</u>   The following prorations and adjustments shall be made between Purchaser and Seller at Closing, or thereafter if Purchaser and Seller shall agree:

(a)    All city, state and county ad valorem taxes and similar impositions levied or imposed upon or assessed against the Property, hereinafter called the "Taxes", for the year in which Closing occurs shall be prorated as of the Closing Date. In the event the Taxes for such year are not determinable at the time of Closing, such Taxes shall be prorated on the basis of the best available information and will not be prorated post-closing by Seller;

(b)    Any other items which are customarily prorated in connection with the purchase and sale of properties similar to the Property shall be prorated as of the Closing Date.

7.    [Intentionally omitted.]

8.    <u>Disposal Systems and Water Source.</u>   Purchaser shall determine the Disposal System and Water Source on the above-described Property.

9.    <u>Title Examination.</u>   Purchaser shall have a reasonable time after the date of this Agreement to examine title and to furnish Seller with a written statement of valid objections affecting the marketability of said title. Purchaser shall not be entitled to object to any of the following matters which affect title:  a) zoning ordinances affecting the Property, b) general utility, sewer and drainage easements of record, c) subdivision easements of record, d) any other leases, easements restrictions or encumbrances specified in this Agreement, and (e) liens and encumbrances that will be divested as a result of the approval of this sale by the Bankruptcy Court.  Seller shall have a reasonable time after receipt of such objections to satisfy all valid objections.  If Seller fails to satisfy such valid objections within a reasonable time, then, at the option of Purchaser evidenced by written notice to Seller, this Agreement shall be null and void. Marketable title as used herein shall mean title which an insurance company licensed to do business in the State of Georgia will insure at its regular rates, subject only to standard exceptions otherwise specified herein.  It is understood and agreed that the title herein required to be furnished by Seller shall be good and marketable, and marketability shall be determined in accordance with Georgia law as supplemented by the Title Standards of the State Bar of Georgia. It is agreed that any defect in the title which comes within the scope of any of said Title Standards shall not constitute a valid objection on the part of the Purchaser provided the Seller furnishes the affidavits or other title papers, if any, required in the applicable standard to cure such defect.  It is further agreed that failure of Seller to cure any title objections shall not be deemed to be a default under this Agreement.

10.    <u>Proceedings at Closing.</u>   On the Closing Date, the Closing shall take place as follows:

(a)    Seller shall deliver to Purchaser the following documents and instruments, duly executed by or on behalf of Seller: (i) a Trustee's Deed, in the form of, and on the terms and conditions set forth in, that attached hereto as

Exhibit "A", conveying the Property by the legal description set forth in Paragraph 1 hereof; (ii) a Seller's Affidavit, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "B"; (iii) an affidavit of Seller's Residence in the form of and on the terms and conditions required by the Revenue Department for the State of Georgia; (iv) and such other instruments as are normal and customary in a purchase and sale transaction of this type; and

(b)      Purchaser shall pay the Purchase Price to Seller in accordance with the provisions of this Agreement.

11.     Costs of Closing.  Purchaser shall pay the State of Georgia real estate transfer tax payable on this transfer of the Property.  Seller shall pay Seller's attorneys' fees and any of the fees and expenses of his Selling Broker.  Except as otherwise expressly set forth on Exhibit "C" attached hereto and by this reference made a part hereof, Purchaser shall pay all loan closing costs, as well as all recording costs, the premium for any owner's policy of title insurance issued in favor of Purchaser insuring Purchaser's title to the Property, the cost of any survey of the Land obtained by Purchaser and Purchaser's and any lender attorneys' fees.  All other costs and expenses of the transaction contemplated hereby shall be borne by the party incurring the same.

12.     Disclaimer of Warranties.  Except for the warranty of title to be included in the Trustee's Deed to be delivered to Purchaser by Seller, Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed.  Without limiting the generality of the foregoing, SELLER MAKES, AND SHALL MAKE, NO EXPRESS OR IMPLIED WARRANTY OF SUITABILITY OR FITNESS OF ANY OF THE PROPERTY FOR ANY PURPOSE, OR AS TO THE MERCHANTABILITY, TITLE, VALUE, QUALITY, QUANTITY, CONDITION OR SALABILITY OF ANY OF THE PROPERTY.  The sale of the Property by Seller to Purchaser hereunder shall be "AS IS" and "WHERE IS".

13.     Possession.  Seller shall surrender possession of the Property to Purchaser on the Closing Date, subject to the Permitted Exceptions.

14.     [Intentionally omitted.]

15.     Remedies.  [Intentionally omitted.]

16.     Damage or Destruction.  Should the Property be destroyed or substantially damaged before time of Closing, Seller, immediately upon his knowledge of such damage or destruction, shall notify the Purchaser and Broker.

17.     Condemnation.  In the event of commencement of eminent domain proceedings or bona fide threat of such proceedings respecting any portion of the Property prior to Closing, Seller shall give Purchaser prompt written notice after Seller becomes aware thereof.  If, prior to Closing, all or any material part of the Property is taken by eminent domain proceedings,

15630251v1

Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving written notice to Seller on or before the date ten (10) days after the date upon which Seller gives Purchaser written notice of such taking, in which event the Earnest Money shall be refunded to Purchaser promptly upon request, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall become null and void.  In the event of a taking of less than all or a material part of the Property, Purchaser shall have no right to terminate this Agreement by reason of such taking; however, Seller shall assign to Purchaser all rights of Seller in and to the awards or other proceeds payable thereafter by reason of such taking.

18.   <u>Association/Assessment Fees.</u>   Purchaser shall determine if any mandatory association/ assessment fees are payable.   Seller makes no representation about any such association and/or assessment fees.

19.   <u>Disclaimer.</u>

(a)   **Independent Expert Advice.** Purchaser acknowledges that Purchaser has not relied upon the advice or representations of Seller or of Seller's agents, attorneys, or employees, with reference to any matter, including but not limited to: legal and tax consequences of this Agreement in the sale of the Property; the terms and conditions of financing; the purchase and ownership of the Property; the structural condition of the Property; the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems, pool, spa and appliances in the Property; the availability of utilities to the Property; the investment potential or resale value of the Property; the availability and ownership of amenity package, if applicable; restrictive covenants and architectural controls; or any other system or condition enumerated in the "Inspection of Property" paragraph above; planned or proposed zoning; proposed or planned changes to or widening of roadways; or any other condition or circumstance which may adversely affect the Property. Purchaser acknowledges that if such, or similar, matters have been of concern to Purchaser, Purchaser has sought and obtained independent advice relative thereto.  Purchaser acknowledges that Closing shall constitute acceptance of the Property.

(b)   **Property Conditions.** Purchaser acknowledges that various substances used in the construction of the improvements on the Property or otherwise located on the Property may now or in the future be determined to be toxic, hazardous or undesirable and may need to be specially treated, handled and /or removed from the Property.   Persons who have an interest in the Property may be required by law to undertake the cleanup of such substances.   Purchaser acknowledges that:  Seller has no expertise with respect to toxic wastes, hazardous substances or undesirable substances; such substances can be extremely costly to correct and remove.  Seller has made no investigations or representations with respect to such substances; and Seller shall have no liability to Purchaser regarding the presence of said substances on the Property. Purchaser releases Seller and Seller's agents, attorneys, and employees from any claim, rights of action or suits

relating to the presence of any hazardous substances, toxic wastes, or undesirable substances on the Property.

20.    <u>Assignment.</u>  This Agreement may not be assigned by Purchaser, in whole or in part, without the prior written consent of Seller.  No assignment shall relieve Purchaser of liability for the performance of Purchaser's duties and obligations under this Agreement.

21.    <u>Parties.</u>  This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective heirs, legal representatives, successors and assigns.  The parties acknowledge that Seller is a court-appointed Bankruptcy Trustee and has no independent knowledge of the Property and has never seen the Property.

22.    <u>Broker and Commission.</u>  All negotiations relative to this Agreement and the purchase and sale of the Property as contemplated by and provided for in this Agreement have been conducted by and between Seller and Purchaser without the intervention of any person or other party as agent or broker other than Listing Broker and Selling Broker. Purchaser and Seller each represents and warrants to the other that, with the exception of any commission or fees provided for in the United States Bankruptcy Code, Title 11, United States Code, to be paid from Seller's proceeds, there are and there will be no agent's, broker's, or other intermediary's fees or commissions payable as a consequence of this transaction, and that they have not dealt with a broker, agent, or intermediary, who might by reason of such dealing have any claim for a fee, commission or other compensation with respect to the purchase and sale of the Property except for a **fee of three and a half percent (3.5%) of the Purchase Price that shall be paid to Listing Broker.  The Selling Broker will waive her commission in this transaction, or Purchaser shall be separately responsible for payment of this commission**. Notwithstanding any provision to the contrary contained herein, any obligation of Seller to pay any fee described in this paragraph 22 shall be subject to Bankruptcy Court Approval of this Agreement as described in paragraph 31 hereof.  Seller and Purchaser agree to indemnify, hold harmless, defend and protect the other from and against any and all claims for commissions, compensation, expense or charge of whatever nature, including but not limited to leasing commission, on the part of any broker, agent or other intermediary claiming by reason of any dealing with them except as set forth in this paragraph 22.

23.    <u>Modification.</u>  This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase and sale of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between Seller and Purchaser with respect thereto.  This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Seller and Purchaser.

24.    <u>Applicable Law.</u>  This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the United States of America and the State of Georgia. The parties agree that the Bankruptcy Court is a proper venue for any legal proceeding concerning this Agreement.

25.    <u>Counterparts.</u>  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

15630251v1

26.    <u>Time.</u>  Time is and shall be of the essence of this Agreement.

27.    <u>Captions.</u>  The captions and headings used in this Agreement are for convenience only and do not in any way restrict, modify or amplify the terms of this Agreement.

28.    <u>Exhibits.</u>  Each and every Exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each Exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

29.    <u>Notices.</u>  All notices, requests, demands, tenders, and other communications under this Agreement shall be in writing. Any such notice, request, demand, tender or other communication shall be deemed to have been duly given when actually delivered, or one (1) day after being delivered to a nationally recognized commercial courier for next day delivery, or when deposited in the United States Mail, Certified Mail, Return Receipt Requested, with all postage prepaid, to the address for each party set forth below its execution of this Agreement. Rejection or other refusal to accept, or inability to deliver because of changed address of which no notice was given, shall be deemed to be receipt of such notice, request, demand, tender, or other communication. Any party, by written notice to the others in the manner herein provided, may designate an address different from that stated above.

30.    <u>Survival.</u>  The provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement, shall survive the consummation of the purchase and sale of the Property on the Closing Date, the delivery of the deed and the payment of the Purchase Price. Notwithstanding anything to the contrary set forth in this Agreement, the provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement shall also survive any termination of this Agreement in accordance with its terms.

31.    <u>Bankruptcy Court Approval.</u>  Notwithstanding any other provision in this Agreement to the contrary, this Agreement shall be subject to and contingent upon the approval of the Bankruptcy Court (herein the "Bankruptcy Court") in that certain case pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 18-64049-BEM** (the "Bankruptcy Case") authorizing the sale of the Property free and clear of all liens and encumbrances in accordance with the terms of this Agreement and with same to the extent valid, enforceable and unavoidable attaching to the net sale proceeds. In the event the Bankruptcy Court fails to approve this Agreement on or prior to the date which is forty-five (45) days from the date of this Agreement, Seller may by notice to Purchaser terminate this Agreement, whereupon the Earnest Money shall be promptly refunded to Purchaser except as provided hereinabove with respect to a Purchaser's default, and this Agreement shall become null and void and the parties shall be relieved of and released from any and all further rights, duties, obligations and liabilities hereunder. Seller reserves the right to contest and compromise any real estate ad valorem tax liability for the Property. Purchaser agrees to cooperate with Seller regarding same so long as Seller bears all costs and expenses in connection therewith.

15630251v1

32.  <u>Home Warranty.</u>  Purchaser may obtain a home warranty at Purchaser's expense.

33.  <u>Locks Changed.</u>  Purchaser shall change the locks to the Property at Purchaser's expense. NOT APPLICABLE.

34.  <u>Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

35.  <u>Special Stipulations.</u>  The special stipulations, if any, attached hereto as **EXHIBIT "C"** if conflicting with any preceding paragraphs shall control; the preceding paragraphs shall not control.

This Agreement shall be open for acceptance **until 11:59 p.m. on the October 13, 2020,** which acceptance date shall constitute the effective date of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, as of the day and year first written above.

Accepted by Seller this ____ day of October, 2020.

SELLER:

_____ [SEAL]
S. GREGORY HAYS, AS AND ONLY AS
TRUSTEE IN BANKRUPTCY FOR THE
ESTATE OF ANGELIA THACKER COGLEY

Initial address for notices:

c/o Arnall Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363

LISTING BROKER:
ATLANTA COMMUNITIES
License No. H-61807

By: _____ [SEAL

Printed Name: Bill Celler, License No 363987
Title:          Realtor

3405 Dallas Highway, Suite 720
Marietta, GA 30064
Telephone: (404) 563-4792
Email: bill@chambersselect.com

Accepted by Purchaser this /4 day of October, 2020.

PURCHASER:

_____ [SEAL]
MATT RAGSDALE

SELLING BROKER:
PALMERHOUSE PROPERTIES, LLC
License No. H-624606

By:

_____ [SEAL]
Printed Name: Gina Ragsdale
               License No. 255379
Title:          Realtor

Address: 2911 Piedmont Road, NE
Atlanta, GA 30305
Telephone: (305) 989-1993
Email: agentgina@hotmail.com

15630251v1

## PURCHASE AND SALE AGREEMENT

### Index to Exhibits

Exhibit "A"    -    Form of Trustee's Deed of Real Estate

Exhibit "B"    -    Form of Seller's Affidavit

Exhibit "C"    -    Special Stipulations (If Any)

15630251v1

## EXHIBIT "A"

### Form of Trustee's Deed of Real Estate

Return to:
Michael Campbell
Campbell & Brannon LLC
5565 Glenridge Parkway, Suite 350
Atlanta, GA 30342


STATE OF GEORGIA

COUNTY OF FULTON


**TRUSTEE'S DEED OF REAL ESTATE**


      THIS INDENTURE, made this **30th** day of **November, 2020,** between **S. GREGORY HAYS, as and only as Trustee in Bankruptcy for the Estate of ANGELIA THACKER COGLEY,** the Debtor, in a case now pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 18-64049-BEM,** filed on **August 21, 2018** (hereinafter called "Grantor"), and **MATT RAGSDALE** (hereinafter called "Grantee").

      Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the copy of the Notice of Chapter 7 Bankruptcy Case, attached as **EXHIBIT "A,"** and by virtue of the power and authority given in and by that Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(b) and (f), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia on **November ___, 2020**, a copy of which is attached as **EXHIBIT B,"** and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto the Grantee, its heirs and assigns forever:

      ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN AS 0.479 ACRES ON PLAT OF ORIGINAL SURVEY FOR DAVID R. LOGAN, AS RECORDED IN PLAT BOOK 80, PAGE 48, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

      TOGETHER WITH:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN AS 2.004 ACRES ON PLAT OF ORIGINAL SURVEY FOR DAVID R. LOGAN, AS RECORDED IN PLAT BOOK 80, PAGE 48, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.


                                                    _____
                                               Grantor's Initials

TOGETHER WITH:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN ON PLAT OF SURVEY FOR CHRISTY AND ANGELIA THACKER, AS RECORDED IN PLAT BOOK 99, PAGE 90, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

TOGETHER WITH:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN AS 1.01 ACRES ON PLAT OF SURVEY FOR STEPHANIE BECK, AS RECORDED IN DEED BOOK 10516, PAGE 427, BEING ATTACHED AS EXHIBIT D TO WARRANTY DEED RECORDED IN DEED BOOK 10516, PAGE 422, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCED AND MADE A PART OF THIS DESCRIPTION.

SAID PROPERTY IS KNOWN GENERALLY AS 461 (AND INCLUDES 321 AND 0) REAVIS MOUNTAIN ROAD, BALL GROUND, CHEROKEE COUNTY, GEORGIA 30107.

with the appurtenances and all of the estate which the said **ANGELIA THACKER COGLEY,** the Debtor, had in said premises at the time of the filing of her Voluntary Petition for Relief in the United States Bankruptcy Court for the Northern District of Georgia, and also the estate therein which the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said Debtor, **ANGELIA THACKER COGLEY,** pursuant to the Sale Order (collectively the "Property").

TO HAVE AND TO HOLD the Property herein granted unto the Grantee, its heirs and assigns forever.

IN WITNESS WHEREOF, Grantor has hereunto set his hand and seal the day and year first above written.

GRANTOR:

Signed, sealed and delivered on
the 30th day of November, 2020, in
the presence of:

_____                    _____ [SEAL]
Unofficial Witness                                                   **S. GREGORY HAYS,** as and only as
                                                                     Trustee in Bankruptcy for the Estate of
                                                                     **ANGELIA THACKER COGLEY,** pursuant to
                                                                     the Bankruptcy Court Order Authorizing the
_____                    Sale of the Property
Notary Public
My Commission Expires: _____

[NOTARY SEAL]

15630251v1

## <u>TRUSTEE'S DEED OF REAL ESTATE</u>

### Index to Exhibits

Exhibit "A"      -       Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

Exhibit "B"      -       Sale Order

**EXHIBIT "A" of TRUSTEE'S DEED OF REAL ESTATE**

**Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines**

## EXHIBIT "B" of TRUSTEE'S DEED OF REAL ESTATE

### Sale Order

## EXHIBIT "B"

## Seller's Affidavit

STATE OF GEORGIA
COUNTY OF FULTON

## SELLER'S AFFIDAVIT

The undersigned, being duly sworn, states:

That the undersigned is the duly authorized and appointed Trustee in Bankruptcy for the Estate of **Angelia Thacker Cogley**, United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, **Case No. 18-68220-PMB,** subject to a bankruptcy court order authorizing the sale of the Property described hereafter ("Seller") and is duly authorized to execute this affidavit;

That Seller, in his capacity as the Bankruptcy Trustee, is the owner of the real property described in **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property");

That Seller has never seen the Property and makes no warranties or representations in regard thereto.  Seller has no knowledge of any disputes concerning the location of the lines and corners of the Property;

That Seller has no knowledge of any improvements or repairs which have been made by or at the instance of Seller on the Property during the three (3) months immediately preceding the date of this affidavit and has never seen the Property;

That, except for the matters set forth on **Exhibit "B"** attached hereto and incorporated herein by reference, to the best of the knowledge of the undersigned, in his capacity as the Bankruptcy Trustee, there are no outstanding indebtedness for or liens against any equipment or fixtures attached to, installed on, the Property or any improvements thereon;

That, to the best of the knowledge of Seller, there are no pending suits, proceedings, judgments, other bankruptcies, liens or executions against Seller, in his capacity as the Bankruptcy Trustee, which affect title to the Property, the improvements thereon or the fixtures attached thereto; and

That Seller is making this affidavit with the knowledge that it will be relied upon by **MATT RAGSDALE** in purchasing the Property from Seller and by purchaser's lender in making a loan on the Property and by a title insurance company insuring the status of title to the Property.

Sworn to and subscribed before me
this 30th day of November, 2020.

_____          _____[SEAL]
Notary Public                                               **S. GREGORY HAYS**, as and only as Trustee in
My Commission expires: _____          Bankruptcy of the Estate of **Angelia Thacker**
                                                                      **Cogley,** pursuant to Bankruptcy Court Order
[NOTARY SEAL]                                             Authorizing the Sale of the Property

15630251v1

## SELLER'S AFFIDAVIT

### Index to Exhibits

Exhibit "A"    -      Legal Description of the Property

Exhibit "B"    -      Permitted Exceptions

15630251v1

## EXHIBIT "A"

## Legal Description of the Property

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN AS 0.479 ACRES ON PLAT OF ORIGINAL SURVEY FOR DAVID R. LOGAN, AS RECORDED IN PLAT BOOK 80, PAGE 48, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

TOGETHER WITH:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN AS 2.004 ACRES ON PLAT OF ORIGINAL SURVEY FOR DAVID R. LOGAN, AS RECORDED IN PLAT BOOK 80, PAGE 48, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

TOGETHER WITH:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN ON PLAT OF SURVEY FOR CHRISTY AND ANGELIA THACKER, AS RECORDED IN PLAT BOOK 99, PAGE 90, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

TOGETHER WITH:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 235 OF THE 4TH DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING SHOWN AS 1.01 ACRES ON PLAT OF SURVEY FOR STEPHANIE BECK, AS RECORDED IN DEED BOOK 10516, PAGE 427, BEING ATTACHED AS EXHIBIT D TO WARRANTY DEED RECORDED IN DEED BOOK 10516, PAGE 422, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCED AND MADE A PART OF THIS DESCRIPTION.

SAID PROPERTY IS KNOWN GENERALLY AS 461 (AND INCLUDES 321 AND 0) REAVIS MOUNTAIN ROAD, BALL GROUND, CHEROKEE COUNTY, GEORGIA 30107.

## EXHIBIT "B"

## Permitted Exceptions

1.    *Ad valorem* real property taxes and assessments outstanding, and the Estate's pro-rated share of 2020.

2.    All other matters disclosed by the public records.

3.    Zoning ordinances affecting the property.

## EXHIBIT "C"

## Special Stipulations

1.      Purchaser understands the Property is being sold "as is, where is."

2.      Purchaser understands there is no disclosure statement included as part of this Agreement.

3.      Purchaser has tendered the earnest money to Campbell & Brannon, LLC in the amount of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00).

4.      This Agreement represents an ALL-CASH transaction and is subject to no contingencies.

5.      Seller will pay none of Purchaser's closing costs.

6.      The Selling Agent has agreed to waive her commission in this transaction.  The Listing Agent will receive a three and a half percent (3.5%) commission of the Purchase Price in the amount of $6,125.00.

9.      Subject to approval of the sale by the Bankruptcy Court, the closing on the sale will take place on or before November 30, 2020, or within ten (10) days following the Bankruptcy Court approval.

15630251v1

## CERTIFICATE SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the foregoing *Motion for Authority to (I) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests, and Encumbrances and (II) Disburse Certain Proceeds at Closing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by First Class Mail to:

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

S. Gregory Hays
Chapter 7 Trustee
Hays, Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

Bill Celler
Atlanta Communities Real Estate
Brokerage, LLC
3405 Dallas Highway
Suite 720
Marietta, GA 30064

Gina Ragsdale
Palmerhouse Properties, LLC
2911 Piedmont Road, NE
Atlanta, GA 30305

Sonya Little
Cherokee County Tax Commissioner
2780 Marietta Highway
Canton, GA 30114

Charles M. Clapp
Law Offices of Charles Clapp, LLC
5 Concourse Parkway, NE
Suite 3000
Atlanta, GA 30328

Angelia Thacker Cogley
383 Antioch Road
Fayetteville, GA 30215

Christy Cogley
1888 Highway 92 S
Fayetteville, GA 30214-5827

Michael Campbell
Campbell & Brannon, LLC
Attention: Denise Hammock
5565 Glenridge Connector
Suite 350
Atlanta, GA 30342

This 19th day of October, 2020.

*/s/ Michael J. Bargar*
Michael J. Bargar

15661013v1